**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

KEVIN PITRE                                                    CIVIL ACTION

VERSUS                                                        NO. 12-1074

CUSTOM FAB OF LOUISIANA, LLC, ET AL.                          SECTION "H" (3)

<u>ORDER AND REASONS</u>

Before the Court are five Motions for Summary Judgment: (1) a Motion for Summary

Judgment filed by First Mercury Insurance Company ("First Mercury") (Doc. 66); (2) a Cross-Motion

for Summary Judgment Against First Mercury filed by Oceaneering International, Inc.

("Oceaneering") (Doc. 76); (3) a Motion for Summary Judgment filed by Custom Fab of Louisiana,

LLC ("Custom Fab")(Doc. 74); (4) a Motion for Summary Judgment against Custom Fab filed by

Oceaneering International, Inc. ("Oceaneering") (Doc. 78); and (5) a Motion for Summary Judgment

to Dismiss Cross-Claim of Oceaneering filed by Custom Fab (Doc. 80).

For the reasons that follow, First Mercury's Motion for Summary Judgment (Doc. 66) is DENIED; Oceaneering's Motion for Summary Judgment against First Mercury (Doc. 76) is GRANTED; Custom Fab's Motion for Summary Judgment on the seaman status of Plaintiff (Doc. 74) is DENIED; Oceaneering's Motion for Summary Judgment against Custom Fab (Doc. 78) is GRANTED; and Custom Fab's Motion for Summary Judgment to Dismiss the Cross-Claim is Oceaneering (Doc. 80) is DENIED.


**BACKGROUND**

Plaintiff Kevin Pitre ("Pitre") was assigned to work aboard the Development Driller III ("DDIII"), a vessel owned by defendant Transocean Offshore USA, Inc. ("Transocean"), by his employer, Custom Fab.  On December 18, 2012 Pitre was assigned to work atop a scaffold located on the Discoverer Enterprise and/or the DDIII.[1]  In order to complete his work, Pitre had to use an electric grinder with a lanyard that permanently attached it to the scaffold.  While operating the grinder, the lanyard cord became caught in the grinder mechanism.  In turn, Pitre lost his footing and fell toward the deck area thereby causing his arms and left leg to strike the railing and deck.

At the time of Pitre's assignment, the DDIII was leased, operated, and/or chartered by BP

---

[1]Plaintiff alleges in his Complaint that he was located aboard the Development Driller III at the time of his accident, however the briefs submitted by the parties contend that Pitre was actually located aboard the Discoverer Enterprise drillship.

Exploration and Production, Inc. ("BP").  BP subsequently contracted with Oceaneering to perform oilfield work and/or services aboard the DDIII.  Custom Fab was contracted by Oceaneering to perform certain oilfield work and services aboard the DDIII.  Pitre was hired by Custom Fab as a welder/pipefitter and subsequently assigned to perform work on the ROV system of the Discoverer Enterprise.

## LEGAL STANDARD

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of fact exists only "[i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the nonmovant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir.1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th

Cir.1995). Summary judgment is appropriate if the non-movant "[f]ails to make a showing sufficient to establish the existence of an element essential to that party's case...." *Celotex Corp. v. Catrett*, 477 U.S. 317,324 (1986). "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial. *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293,301 (5th Cir.2004) (internal citations omitted). "We do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382,394 (5th Cir.2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069,1075 (5th Cir.1994)). Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion." *Boudreaux v. Banctec, Inc.*, 366 F.Supp.2d 425, 430 (E.D. La. 2005).

## LAW AND DISCUSSION

I.  *The Oceaneering-Custom Fab Contract*

Before the Court are two competing Motions for Summary Judgment filed by Oceaneering and Custom Fab.  The crux of the Motions is whether the Purchase Order entered into between Oceaneering and Custom Fab ("CF-Oceaneering Agreement") is a maritime or non-maritime contract.

-4-

For the reasons that follow, the Court finds that the CF-Oceaneering Agreement is a maritime contract.  Accordingly, maritime law applies and ousts any application of the Outer Continental Shelf Lands Act, which adopts state law.  Because general maritime law applies, the indemnity provisions in the CF-Oceaneering Agreement are valid and enforceable and Oceaneering is entitled to defense and indemnity from Custom Fab.  Lastly, because Custom Fab failed to name Oceaneering as an additional assured on its policy of insurance, Custom Fab is in breach.  Based on these findings, Oceaneering's Motion for Summary Judgment is granted and Custom Fab's Motion for Summary Judgment is denied.

A.    <u>Arguments of the Parties</u>

Oceaneering argues that the CF-Oceaneering Agreement is a maritime contract because it pertains to the services of a vessel, namely the drillship Discoverer Enterprise located on the Viosco Knoll block 914.  Oceaneering concludes that, under maritime law, indemnity provisions, such as the ones found in the CF-Oceaneering Agreement , are routinely upheld and enforceable.  As such, Oceaneering requests the Court to grant its summary judgment.

Custom Fab maintains that the CF-Oceaneering Agreement is a non-maritime contract. Because the CF-Oceaneering Agreement is a non-maritime contract, Custom Fab contends that the Outer Continental Shelf Lands Act ("OCSLA") applies and Louisiana law will act as surrogate state law.  When Louisiana law applies, Custom Fab alleges that the Louisiana Oilfield Anti-Indemnity Act ("LOAIA") will apply thereby rendering the indemnity provisions in the CF-Oceaneering Agreement

unenforceable.  Accordingly, Custom Fab requests the Court to dismiss the claims of Oceaneering

B.      Whether the CF-Oceaneering Agreement is a Maritime Contract

The first issue that the Court must decide is whether the CF-Oceaneering Agreement is a

maritime contract.  *See Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,* 589 F.3d 778, 789 n.9 (5th

Cir. 2009) ("in determining whether state law applies in an OCSLA action, predicated on a contract,

it is permissible to consider whether the contract at issue is a maritime contract before considering

whether OCSLA situs has been established").  For the reasons that follow the Court finds that the

CF-Oceaneering Agreement  is a maritime contract.  Accordingly, the Court pretermits any

discussion of the applicability of OCSLA in this matter.

In determining whether a contract is maritime, the court's consideration is two-fold.  *Davis*

*and Sons, Inc. v. Gulf Oil Corporation*, 919 F.2d 313 (5th Cir. 1990), *reh'g denied*, 924 F.2d 1054

(1991).  Specifically, a court must analyze the historical treatment of similar contracts in the

jurisprudence and also make a fact-specific inquiry.  *Davis*, 919 F.2d at 316.  If the historical

treatment is not dispositive, then a court is directed to make a fact-specific inquiry.  When making

this inquiry, courts must analyze these six factors: (1) what the specific work order in effect at the

time of the injury provided; (2) what work the crew assigned under the work order performed; (3)

whether the crew was assigned to work aboard a vessel in navigable waters; (4) to what extent the

work being done related to the mission of the vessel; (5) what the principal work of the injured

worker was; and (6) the work the injured worker was actually doing at the time of the injury.  *Id.*

"The maritime or non-maritime status of the contract ultimately depends on its 'nature and character,' not on its place of execution or performance." *Hoda v. Rowan Companies, Inc.*, 419 F.3d 379, 381 (5th Cir. 2005) (quoting *Davis*, 919 F.2d at 316).

### 1.        Historical Treatment of Similar Contracts

The Fifth Circuit has recognized that there are "[i]nherent tensions between the non-maritime nature and concerns of traditional oil and gas drilling and those of the salty locale in which such exploration often occurs." *Hoda*, 419 F.3d at 382.  When services are peculiar to the oil and gas industry, and not maritime commerce, then these do not constitute maritime contracts. *See id.*  On the other hand, when the obligation underlying the contract is inextricably intertwined with the activities of the vessel, and could not be performed without the vessel's direct involvement, then there is a strong basis for finding a maritime contract. *Id.*

A drillship is a maritime vessel fixed with the necessary equipment for drilling operations that is subsequently anchored in place.  *See* W. Scott Hastings, *To Avoid Drowning in the Gaps of Workers' Compensation Coverage on the Outer Continental Shelf*, 35 J. Mar. L. & Com. 35, 44 n.41 (2004).  Similarly, a jack-up rig is a drilling vessel used for offshore drilling operations.  *Id.*  The courts' interpretations of contracts involving work on jack-up rigs, and similarly drillships, has been fluent.  In some instances, courts have found that, although the obligation under the contract was inherently non-maritime in nature, the contract was maritime because the use of the rig-vessel was

-7-

central to the work performed under the contract.[2] Other courts, however, have found that a non-maritime obligation forms a non-maritime contract, regardless of the fact that the work was performed on a rig-vessel.[3]

Thus, neither the fact that a contract calls for services to be performed on a drillship, a vessel, nor the fact that such services are traditionally non-maritime is determinative. *See Energy XXI, GoM, LLC v. New Tech Engineering, L.P.*, 787 F. Supp. 2d 590, 601–02 (S.D. Tex. 2011) (finding the same for a jack-up drilling rig). An analysis of the historical treatment may sometimes allow for a determination of the contract without necessitating the Court to assess the contract further.

---

[2]

*See, e.g.*, *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 115, 1123 (5th Cir. 1992) (a contract using a jack-up rig to accomplish drilling oil and gas wells is maritime); *Hoda*, 419 F.3d at 382 (torquing up and down blowout preventer stacks on a jack-up rig is maritime in nature); *Devon La. Corp. v. Petra Consultants*, Inc. 247 F. App'x 539, 545 (5th Cir. 2007) (while the torquing of bolts on blowout preventer stacks does not require the use of the vessel or its crew, the work would have been irrelevant and impossible if the vessel's rig was not used and therefore the contract is maritime); *Lopez v. Magnolia Industrial Fabricators*, No. 05-0371, 2006 WL 2850447, at *4 (E.D. La. Oct. 3, 2006) (the contract for crane inspection services on a jack-up drilling rig is maritime); *Demette v. Falcon Drilling Co., Inc.*, 280 F.2d 492 (5th Cir. 2002) (when the work being performed is integral to the primary purpose of the vessel then the contract is maritime); *Diamond Offshore Co. v. A&B Builders, Inc.*, 75 F. Supp. 2d 676, 680 (5th Cir. 1999) (welding a pollution pan onto a semi-submersible drilling rig, a vessel, so that it would be fit to perform its function of offshore oil exploration is considered a vessel repair which is maritime in nature).

[3]

*Domingue v. Ocean Drilling and Exploration Co.*, 923 F.2d 393 (5th Cir. 1991) (when a vessel only serves as a work platform to perform services that are peculiar to the oil and gas industry then the contract is non-maritime); *Thurmond v. Delta Well Surveyors*, 836 F.2d 952 (5th Cir. 1988) (the use of a work barge was only incidental to the performance of the contract and therefore the contract was maritime)

-8-

*Hoda*, 419 F.3d at 381 (citing *Demette*, 280 F.3d at 500).  This is not the case here.  While the Court acknowledges the significant precedent weighing in favor of finding  the CF-Oceaneering Agreement is a maritime contract, the Court feels that further analysis is needed.  Accordingly, the Court analyzes the *Davis* factors.

> **2.     The *Davis* Factors**

The first *Davis* factor requires the Court to consider the specific work order in effect at the time of the injury.  In this case, there was a purchase order in place between Custom Fab and Oceaneering.  (Doc. 84-2 at 11.)  Specifically, the CF-Oceaneering Agreement identified that fabrication and welding services were to be provided offshore.  (*Id.* at 2.)  The Fifth Circuit found that the first *Davis* factor favored a conclusion that a contract was maritime when the work order was for welding and supplying labor and materials to repair a semi-submersible drilling rig. *Diamond Offshore Co.*, 302 F.3d at 549.  Similarly, the work order here deals with supplying labor for welding and repairs to a drillship.  Accordingly, this factor weighs in favor of the CF-Oceaneering Agreement being a maritime contract.

The second factor requires the Court to analyze what work the crew assigned under the work order actually did.  Pitre was assigned to be a welder to assist in retrofitting the ROV Millennium 86 trolley system located on the Discoverer Enterprise.  At the time of Pitre's accident he was performing grinding work that was integral to his welding work on the ROV system.  Courts are consistent in holding that repair services to a vessel are maritime in nature.  *See Diamond*

*Offshore Co.*, 302 F.3d at 549 ("contracts for vessel repair services are traditionally treated as maritime").  Accordingly, the Court finds that this factor militates a in favor of a maritime contract.

The third factor asks the Court to consider whether the crew was assigned to work aboard a vessel in navigable waters.  As noted previously, a drillship is considered a maritime vessel that has drilling and sea floor attachment capabilities.  *See* W. Scott Hastings, *To Avoid Drowning in the Gaps of Workers' Compensation Coverage on the Outer Continental Shelf*, 35 J. Mar. L. & Com. 35, 44 n.41 (2004).  "[T]his circuit has repeatedly held that special-purpose movable drilling rigs . . . are vessels within the meaning of admiralty law."  *Demette*, 280 F.3d at 498, n. 18.  Accordingly, this factor favors a finding that the CF-Oceaneering Agreement is a maritime contract.

Under the fourth factor, the Court must question the extent to which the work being done was related to the mission of the vessel.  Custom Fab contends that because the work Pitre was performing did not relate to the navigation function of the vessel then his services were not related to the mission of the vessel.  Oceaneering, however, asserts that Pitre was performing welding related services to the ROV which was an integral part of primary purpose of the Discoverer Enterprise drillship - drilling.

An ROV is "[a]n unmanned underwater vehicle equipped with robotics and tethered to a vessel from which it is operated."  *Am. Home Assurance Co. v. Oceaneering Intern., Inc.*, No. H-06-2105, 2008 WL 2169411, at *1 (S.D. Tex. May 22, 2008).  Typically, an ROV is "[u]sed for underwater inspection, surveying and light construction."  *Submersible Sys., Inc. v. Perforadora*

-10-

*Cent., S.A.*, No. Civ. A. 1:98CV251GR, 1999 WL 33456914, at *1 (S.D. Miss. July 19, 1999). ROV's are commonly "[u]sed in oil and gas drilling operations." *C-Innovation, LLC v. Norddeutsche Seekabelwerke GmbH*, No. 10-4441, 2011 WL 5299643, at *1 (E.D. La. Nov. 3, 2011).

Custom Fab cites to no authority, nor can this Court find any, that requires the work to be related to the navigation of the vessel. On the other hand, the Court finds that the ROV system is an important part of drilling operations. In turn, the Court finds that this factor weighs in favor of a finding that the work being done was related to the mission of the vessel.

The fifth and sixth factors related to the tasks of the injured worker. Specifically, the Court must assess the principal work of the injured worker and what the injured worker was doing at the time of the alleged injury. Pitre's primary task was to perform welding and repair services to an ROV system located on the Discoverer Enterprise drillship. At the time of his incident he was performing grinding work related to the welding of the ROV system. As such, his principal work related directly to the mission of the vessel, and he was performing this work at the time of the incident. Accordingly, these two factors weigh in favor of the CF-Oceaneering Agreement being a maritime contract.

Ultimately, there is no broad characterization whereby service contracts are maritime whenever they contribute to the mission of a vessel. *See Hoda*, 419 F.3d at 383. Accordingly, courts are directed to make a fact-specific inquiry. Based on the facts of this case the Court finds that the CF-Oceaneering Agreement is indeed a maritime contract.

C.   Indemnity Provisions

Because the CF-Oceaneering Agreement is a maritime contract, the contract's indemnity provisions are enforceable under maritime law.   *See Hoda*, 419 F.3d at 383.   Accordingly, Oceaneering is entitled to indemnity in the instant matter.

The indemnity claims made by Oceaneering arises under the CF-Oceaneering Agreement. The CF-Oceaneering Agreement provides, in pertinent part, the following indemnity provision:

> Seller [Custom Fab] shall DEFEND, INDEMNIFY AND HOLD HARMLESS Buyer [Oceaneering], its parent, affiliate, subsidiaries and their respective officers, directors, employees and agents from any and all suits, claims, losses, costs, damages, expenses I(including, but not limited to, all expenses of litigation, court costs, expert witness fees, and attorney's fees) or liability (including, but not limited to, liability for pollution, property damage or personal injury, including death, or any loss or damage asserted against or suffered or incurred by Buyer [Oceaneering] due to Seller's [Custom Fab's] noncompliance with the terms and conditions of this Purchase Order, of whatsoever nature or kind, whether in contract or in tort or otherwise, whether arising under common law or state or federal statute, or arising out of [sic] a result of or in connection with this Purchase Order or any goods supplied or services rendered hereunder, and whether or not caused, IN WHOLE OR IN PART, by the negligence (BE IT SOLE, CONCURRENT, ACTIVE OR PASSIVE), BREACH OF WARRANTY, STRICT LIABILITY or other legal fault of Buyer [Oceaneering], EXCEPT TO THE EXTENT ATTRIBUTABLE TO BUYER'S [Oceaneering's] GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.  The provisions of this Section shall survive the termination of this Purchase Order.

(Doc. 84-2 at 11.)

"A maritime contract containing an indemnity agreement, whether governed by federal maritime or Louisiana law, should be read as a whole and its words given their plain meaning unless the provision is ambiguous."  *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 834 (5th Cir. 1992).  The

indemnity provisions "[s]hould not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981).  Thus, an indemnity provision "will not afford protection unless its terms are expressed unequivocally." *Hardy*, 949 F.2d at 834.

The Court finds that the indemnity provision found in the CF-Oceaneering Agreement is clear and unambiguous.  Chad Jouclas, on behalf of Custom Fab, accepted and acknowledged the terms and conditions of the  CF-Oceaneering Agreement on January 19, 2010. (Doc. 84-2 at 10.) Accordingly, it is evident that, by the clear terms of the CF-Oceaneering Agreement and its acceptance, Custom Fab agreed to be responsible for, protect, defend, release, indemnify and hold Oceaneering harmless against any and all suits, claims, losses, costs, damages, expenses, including those for personal injury.  (*Id.* at 11.)

In conclusion, the Court finds the CF-Oceaneering Agreement and the indemnity provisions contained therein are clear and unequivocal.   Accordingly, Oceaneering is entitled to the enumerated indemnity protections.  Oceaneering, however, is not entitled to recover attorneys fees incurred in enforcing this contractual right. *See Becker v. Tidewater, Inc.*, 586, F.3d 358, 375 (5th Cir. 2009).[4]

---

[4]Although there is some authority that attorneys' fees may be recoverable if specifically identified in the indemnity provision, the agreement here does not expressly anticipate that attorneys' fees incurred in enforcing the indemnity provision will be recoverable. *See Becker,*

D.     Additional Insured

Oceaneering argues that Paragraph 19 and the attached "Exhibit A: Insurance Requirements for Seller Services" of the CF-Oceaneering Agreement obligates Custom Fab to provide defense and indemnity to Oceaneering and to name Oceaneering as an additional insured on Custom Fab's general liability insurance policies.  (Doc. 78-1 at 5.)  Oceaneering maintains that First Mercury, Custom Fab's insurer, has refused to defend Oceaneering or acknowledge it as an additional insured.  (*Id.* at 13.)  As such, Oceaneering  argues that they are entitled to the fees and costs in defending this suit and any amounts paid.  (*Id.*)  Custom Fab argues that because the contractual indemnity and additional insured provisions of the CF-Oceaneering Agreement are unenforceable and void as a matter of public policy then Oceaneering cannot succeed on its  claim.  (Doc. 80-1 at 19.)

Paragraph 19 enumerates that Custom Fab agrees to carry (a) workmen's compensation insurance, or similar coverage; (b) comprehensive general liability insurance; (c) automobile liability insurance; and (d) umbrella liability insurance.  (Doc. 84-2 at 12.)  Exhibit A to the Purchase Order further defines the insurance requirements for Custom Fab's Services.  (*Id.* at 14.)  Exhibit A specifically states that "all policies (except Workers' Compensation and Employer's Liability Insurance) listed above shall be endorsed to name Buyer [Oceaneering] as additional assured to the extent of liability assumed by Seller [Custom Fab] under this Purchase Order."  (*Id.*)

---

586 F.3d at 375.

The plain language of the CF-Oceaneering Agreement requires Custom Fab to list Oceaneering as an additional insured for various, enumerated insurance policies with respect to Custom Fab's obligations under the agreement.   This duty is independent of the indemnity obligations owed.   *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 551 (5th Cir. 2002); *see also In re Elevating Boats LLC*, 286 Fed. Appx. 118, 123 (5th Cir. 2008).   Accordingly, based on the  CF-Oceaneering Agreement, Custom Fab was required to list Oceaneering as an additional insured on these various policies, including its comprehensive general liability insurance. Consequently, summary judgment is granted in favor of Oceaneering.[5]

II.    *Seaman Status of Pitre*

Custom Fab argues that Pitre was not a seaman within the meaning of the Jones Act and, accordingly, his claims against Custom Fab must be dismissed.   Plaintiff avers that there is no dispute that the evidence shows that Pitre was a seaman on the date of his injury.   At the very least, Plaintiff maintains that there are genuine issues of fact which preclude a summary disposal of Pitre's claims against Custom Fab.   This Court finds that there are genuine issues of fact as to

---

[5]

Oceaneering requests fees, costs, and/or any amounts paid out in settlement to be reimbursed due to Custom Fab's breach.  To the extent that attorneys fees are sought, this request is denied.  None of the required coverages specifies that attorneys fees would be included.  *See One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, No. H-08-2059, 2012 6201202, at *7 (S.D. Tex. Dec. 12, 2012).  In the end, Custom Fab "[n]eed not extend their insurance coverage to [Oceaneering] beyond the required scope of [Paragraph 19 and Exhibit A]."  *Id.*

Pitre's status as a seaman on the date of his alleged injury.  Accordingly, Custom Fab's Motion is denied.

A.     <u>The Seaman Inquiry Generally</u>

The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law . . . against the employer."  46 U.S.C. § 30104.  Congress did not define the term "seaman."  Thus, federal courts have undertaken the difficult task of defining the special class of maritime workers entitled to the protections of the Jones Act.  *Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 298 (5th Cir. 2008).  To help navigate these murky waters, the Supreme Court has developed a two-prong test.  First, a plaintiff must show that his duties "contribut[e] to the function of the vessel or to the accomplishment of its mission."  *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995) (alterations in original) (internal quotations and citations omitted).  Second, a plaintiff must "demonstrate a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."  *Id.*  "The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question away from the jury."  *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554 (1997).  Nonetheless, "judgment as a matter of law is mandated where the facts and the law will reasonably support only one conclusion."  *Becker v. Tidewater, Inc.*, 335 F.3d 376, 386 (5th Cir. 2003).

B.     <u>Whether Plaintiff Satisfies the First Prong of Chandris</u>

"The Supreme Court in *Chandris* admitted that satisfying the first prong of the test is

relatively easy: the claimant need only show that he 'do[es] the ship's work.'"   *Id.* at 387–88

(alterations in original) (quoting *Chandris*, 515 U.S. at 368).  Indeed, "this threshold requirement

is very broad" and encompasses "[a]ll who work at sea in the service of a ship."  *Chandris*, 515 U.S.

at 368 (internal quotations and citations omitted).

      Nonetheless, Custom Fab argues that Pitre did not contribute to the mission of the

Discoverer Enterprise.  This Court previously found that Pitre's job as a welder on the ROV system

was related to the mission of the vessel.  The function of the vessel was to drill for oil, and the ROV

system is an important part of that function.  *See infra.*  Notably, Pitre was at sea at the time of his

servicing of the vessel.  Even Custom Fab acknowledges that "it is unnecessary that the plaintiff

actually aid in the navigation or transportation functions of the vessel."  *McCord v. Fab-Con, Inc.*,

2012 WL 3613111, at *3 (E.D. La. Aug. 21, 2012) (quoting *Chandris*, 515 U.S. at 376).  Based on the

foregoing, this Court finds that Plaintiff presents sufficient evidence to withstand summary

judgment under the first prong of *Chandris*.

      C.    <u>Whether Plaintiff Satisfies the Second Prong of Chandris</u>

      The purpose of this prong is to "separate the sea-based maritime employees who are

entitled to Jones Act protection from those . . . whose employment does not regularly expose them

to the  perils of the sea."  *Id.* (citations omitted).  The Court explained in *Papai* that "[f]or the

substantial connection requirement to serve its purpose, the inquiry into the nature of the

employee's connection to the vessel must concentrate on whether the employee's duties take him

-17-

to sea." 520 U.S. at 555.  The Fifth Circuit has held that the *Papai* Court did not intend to imply that an employee's duties must literally take him to sea.  *In re Endeavor Marine*, 234 F.3d 287, 291 (5th Cir. 2000) (per curiam).   Rather, the "going to sea" passage is merely "a shorthand way of saying that the employee's connection to the vessel [must] regularly expose[] him to the perils of the sea." *Id.* (internal quotations and citations omitted).

The *Chandris* Court emphasized that "this second prong constitutes a 'status based' standard—*i.e.*, 'it is not the employee's particular job that is determinative [of seaman status], but the employee's connection to a vessel.'" *Becker*, 335 F.3d at 388 (alterations in original) (quoting *Chandris*, 515 U.S. at 388).  Thus, seaman status cannot be resolved simply by examining the situs of an injury or the particular work the injured employee was performing at the time he was injured. *Saienni v. Capital Marine Supply, Inc.*, No. Civ.A. 03–2509, 2005 WL 940558, at *6 (E.D. La. Apr. 18, 2005) (citations omitted).  Rather, "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon." *Chandris*, 515 U.S. at 370 (internal quotations and citations omitted).

The second prong of the seaman test is conjuctive: an injured worker's connection to a vessel or identifiable group of vessels must be substantial in both duration and nature.  *Roberts v. Cardinal Servs. Inc.*, 266 F.3d 368, 374 (5th Cir. 2001) (citing Chandris, 515 U.S. at 371).  The Court examines each requirement separately.

-18-

1.      **Substantial in Duration**

The *Chandris* Court adopted the Fifth Circuit's rule of thumb that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." 515 U.S. at 371.  The Fifth Circuit has held that this "30 percent floor does not change when an 'identifiable group' of vessels in navigation is at issue, rather than just one vessel." *Roberts*, 266 F.3d at 375.  For purposes of determining seaman status, an "identifiable group of vessels" is one that is subject to common ownership or control. *Papai*, 520 U.S. at 557.

Custom Fab argues that Pitre's work on the Discoverer Enterprise or the DDIII was not substantial in duration.  Custom Fab focuses on the fact that Pitre had only worked for two to three days on these vessels at the time of his incident.  Moreover, Custom Fab argues that Pitre's work consisting of odd and end jobs lasting anywhere from one day to one week cannot amount to the requisite thirty percent.  Lastly, Custom Fab highlights that Pitre neither worked on the same vessel nor an identifiable fleet of vessels.

The Court finds that there is sufficient evidence that a jury could find that Pitre's work was substantial in duration.  Pitre admits that he had a history of episodic employment with Custom Fab from 2008 to 2011.  On the other hand, Pitre accepted a position on the DDIII and Discoverer Enterprise for a two to three month hitch of continuous employment aboard the vessels.  The sixty to ninety day tenure included twelve hour daily work days that were sea based.  "When a maritime

-19-

worker's basic assignment changes, his seaman status may change as well." *Chandris*, 515 U.S. at 372.   Indeed, merely because Pitre had disjointed work prior to his work on the DDIII and Discoverer Enterprise does not make him ineligible to be considered as seaman under the Jones Act.  This Court acknowledges that Pitre was injured on only the second or third day of his two to three month hitch.  Significantly, however, "such a person should not be denied a seaman status if injured shortly after the reassignment." *Id.*  Based on this reasoning, Pitre certainly presents enough evidence to survive summary judgment on this prong.

2.      <strong>Substantial in Nature</strong>

Regardless of their being a triable factual issue regarding whether Pitre's work was substantial in nature, the Court must also address whether Pitre's work on the Discoverer Enterprise and DDIII is substantial in *nature*.  As discussed *supra*, this inquiry turns on whether Plaintiff was regularly exposed to the perils of the sea.  The Court finds that there is sufficient evidence to survive summary judgment on this issue.

Custom Fab argues that the temporal nature of Pitre's employment alone precludes him from being a seaman under the Jones Act.  On the other hand, Plaintiff maintains that he was subjected daily to the perils of the sea.  In support of this argument, Plaintiff highlights that the vessel was of considerable size and he was engaged in maintenance of this vessel, its appliances and/or appurtenances.

The Court finds that there is insufficient evidence to make a finding of whether Pitre's work

at sea was substantial in nature.  "A maritime employee [that] receives a new work assignment in which his essential duties are changed . . . is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position."  *Chandris*, 515 U.S. at 372.  Based on the foregoing, the Court finds that granting summary judgment on this issue is improper.

        D.    <u>Conclusion</u>

In the end, a "[j]ury should be permitted, when determining whether a maritime employee has the requisite employment-related connection to a vessel in navigation to qualify as a member of the vessel's crew, to consider all relevant circumstances bearing on [these] two elements."  *Chandris*, 515 U.S. at 369.  The Court finds that the record warrants a conclusion that reasonable minds could differ as to Pitre's status as a seaman.  Accordingly, Custom Fab's Motion for Summary Judgment is denied.

        III.    *The Insured Status of Oceaneering*

Before the Court are two competing Motions for Summary Judgment filed by First Mercury and Oceaneering.  (Docs. 66, 76.)  The essence of the Motions is the additional insured provisions in First Mercury's insurance policy with Custom Fab.  For the following reasons the Court finds that First Mercury owes a duty to defend Oceaneering.  Whether or not First Mercury owes indemnity shall be decided via post-trial briefing after the trier of fact renders its decision on the negligence

of Pitre and Custom Fab.

First Mercury alleges that its policy with Custom Fab does not provide for additional insured coverage to Oceaneering because the injuries purportedly suffered by Pitre were not, as required for coverage under its policy, caused in whole or in part by Custom Fab.  In essence, First Mercury argues that its policy does not cover Oceaneering unless Custom Fab contributed to Pitre's injuries.  First Mercury maintains that the evidence establishes that Custom Fab played no role in causing Pitre's accident.  Oceaneering highlights, however, that Pitre alleges the fault of Custom Fab, his employer, in his Complaint.  Because the Complaint expressly asserts a claim against Custom Fab, Oceaneering argues that there is a potential for finding that the occurrence could be caused in whole or in part by Custom Fab.  Oceaneering concedes that First Mercury's duty to indemnify may not be able to be determined until the trier of fact determines whether Custom Fab and/or Pitre's actions caused in whole or in part Pitre's damages.  In the interim, however, Oceaneering maintains that First Mercury owes it a duty to defend.

The Additional Insured Endorsement in the First Mercury Commercial General Liability policy provides, in pertinent part:

A.      Section II - Who is an Insured is amended tin include as an additional insured any person or organization for whom you [Custom Fab] are performing operations when you [Custom Fab] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:

> 1.   Your [Custom Fab] acts or omissions; or
>
> 2.   The acts or omissions of those acting on your [Custom Fab's] behalf;
> in the performance of your [Custom Fab's] ongoing operations for the additional insured.

The Court finds that under the clear terms of this policy Oceaneering should be considered as an additional insured. Oceaneering is an organization for whom Custom Fab was performing operations and, as discussed *infra.*, Oceaneering and Custom Fab agreed in writing that Oceaneering would be added in writing.

If a petition discloses the possibility of liability under the policy, the insurer has a duty to defend. *United Fire and Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Courts are directed to review the four corners of the complaint and insurance policy when making a duty to defend determination. *Id.* "The court should interpret the petition liberally when making this determination." *Id.* "If any facts alleged in the petition support a claim for which coverage is not unambiguously excluded, the insurer must defend the insured." *Id.* (citation omitted).

The Court finds that Pitre's Complaint unambiguously alleges that Pitre's injuries are a direct or proximate result of the Defendants, including Custom Fab. Because of Pitre's allegations, there is a potential for Pitre's injuries to be caused in whole or in part by Custom Fab, or someone acting on its behalf. "A determination on the ultimate issue of negligence need not be made in order to invoke [First Mercury's] duty to defend." *Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc.*, 215 F.Supp.2d 783, 790 (E.D. Tex. 2002). Based on the foregoing, the Court finds that under the

provisions in the First Mercury insurance policy, First Mercury has a duty to defend Oceaneering.

Accordingly, First Mercury's Motion for Summary Judgment is denied and Oceaneering's is granted.

The Court further finds that the duty to indemnify is dependent upon a finding of Pitre's or Custom Fab's own acts or omissions. *See Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, LLP*, 267 F.Supp.2d 601, 625 (E.D. Tex. 2003) ("the duty to defend may be triggered by the pleadings, but the duty to indemnify is based on the jury's findings").  Accordingly, both Motions are denied without prejudice as to this issue.  The parties may re-urge the Motions, if warranted, after the finder of fact renders a determination on the liabilities of the parties.

**CONCLUSION**

For the foregoing reasons, First Mercury's Motion for Summary Judgment (Doc. 66) is DENIED; Oceaneering's Motion for Summary Judgment against First Mercury (Doc. 76)  is GRANTED; Custom Fab's Motion for Summary Judgment on the seaman status of Plaintiff (Doc. 74) is DENIED; Oceaneering's Motion for Summary Judgment against Custom Fab (Doc. 78) is GRANTED; and Custom Fab's Motion for Summary Judgment to Dismiss the Cross-Claim is Oceaneering (Doc. 80) is DENIED.


New Orleans, Louisiana on this 19th day of August, 2013.


**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT COURT JUDGE**